**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                    :
PHILLIP ANTONIO THOMPSON,           :   CIVIL ACTION
                                    :
            Petitioner,             :
                                    :
    v.                              :   NO. 08-5510
                                    :
LOUIS S. FOLINO, et al.,            :
                                    :
            Respondents.            :
_____:
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE

**REPORT AND RECOMMENDATION**

    Phillip Antonio Thompson ("Petitioner") has filed a Petition
for writ of habeas corpus.  For the following reasons, I
recommend that the Petition be denied.

**I.    FACTS AND PROCEDURAL HISTORY**.[1]

    Petitioner was convicted on October 19, 2001, of second
degree murder, robbery and criminal conspiracy arising out of a
robbery that occurred on October 30, 2000, in which the victim,
Patrick Dougherty, was shot and killed while attempting to
purchase drugs.  The facts, as determined by the state courts,
established that Dougherty, the driver, and Cynthia Walker, the
passenger, drove to Ninth and Booth Streets in Chester to
purchase cocaine.  Two men approached Dougherty's vehicle, one of

_____

    [1] The factual information of Petitioner's crimes is taken from the
Pennsylvania Superior Court opinion on Petitioner's direct appeal.
<u>Commonwealth v. Thompson</u>, No. 595 EDA 2002, slip op. 1-2, 821 A.2d 137 (Pa.
Super. 2003)(table).  Other information is taken from the Petition for Writ of
Habeas Corpus, the Response thereto, and the attachments to those pleadings.

whom was identified by Walker as Petitioner.  Petitioner reached in through the passenger window, grabbed Walker's shirt, pulled her toward him, and told her to give him her money.  Dougherty grabbed Walker's left arm, pulled her toward him, and began to drive away.  Bagley fired a 38-caliber revolver.  The fatal bullet entered the back of Dougherty's head.  Charges against Petitioner were filed on November 6, 2000, but charges against Bagley, Petitioner's co-defendant, were not filed until April of 2001.  Petitioner was tried first, and a mistrial was declared.  Subsequently, the Commonwealth requested that Petitioner's and Bagley's cases be tried together.  Petitioner's counsel requested that the cases be severed, but the Commonwealth's Motion for Joinder was granted by the trial court.

At Petitioner's re-trial in October of 2001, Petitioner was convicted of second degree murder, robbery, and criminal conspiracy.  On December 11, 2001, Petitioner was sentenced to life imprisonment for the murder charge and 10 to 20 years for the conspiracy charge, to run concurrently with the life sentence.

Petitioner timely appealed to the Pennsylvania Superior Court.  The Superior Court, in an opinion dated February 5, 2003, rejected Petitioner's claim that the trial court erred when it granted the Motion for Joinder.  The Court also rejected Petitioner's arguments that the evidence was insufficient to

sustain his conviction of second degree murder and that the trial court erred in refusing to admit a "fugitive arrest warrant" for Walker as a defense exhibit. Commonwealth v. Thompson, No. 595 EDA 2002 (slip op), 821 A.2d 137 (Pa. Super. 2003)(table).  A petition for allowance of appeal was denied by the Pennsylvania Supreme Court on June 4, 2003.  Commonwealth v. Thompson, No. 162 MAL 2003, 825 A.2d 638 (Pa. 2003)(table).

On June 10, 2004, Petitioner filed his first PCRA petition, pursuant to 42 Pa. Con. Stat. Ann. § 9541, raising as his sole issue whether trial counsel was constitutionally ineffective for failing to request a jury charge for third degree murder, a lesser-included offense of second-degree murder.  Counsel was appointed for Petitioner, and an amended PCRA Petition was filed on September 21, 2005.  The PCRA court held a hearing on the amended PCRA Petition on February 14, 2006, and denied the petition on June 20, 2006.

Petitioner appealed the denial of his PCRA petition, and on March 11, 2008, the Superior Court affirmed the denial of the PCRA petition. Commonwealth v. Thompson, No. 2107 EDA 2006 (slip op), 953 A.2d 607 (Pa. Super. 2008)(table); Resp. Ex. D. The Superior Court determined, after reviewing testimony of Petitioner's counsel at the PCRA hearing, that trial counsel's efforts at trial were to portray Petitioner as an innocent bystander to the co-defendant's activities, and thereby achieve

-3-

an outright acquittal for Petitioner.  Therefore, there was no
evidence presented at trial to demonstrate Petitioner was
involved in a less culpable capacity that would give rise to only
a third-degree murder conviction; therefore, any instruction to
the jury on third-degree murder would have improperly invited the
jury to return a verdict based on mercy rather than the facts.
Commonwealth v. Thompson, slip op. at 4-5.

The Pennsylvania Supreme Court denied allowance of appeal on
August 25, 2008.  Commonwealth v. Thompson, No. 220 MAL 2008, 955
A.2d 358 (Pa. 2008)(table); Resp. Ex. E.  On November 5, 2008,
Petitioner filed a second PCRA petition.  In the second petition,
Petitioner claimed that government officials had interfered with
his appeal rights and that after discovered evidence had come to
light that was unavailable at the time of trial that would have
changed the outcome of his trial.  The PCRA court determined that
the second PCRA petition was untimely and dismissed the petition
without a hearing on November 18, 2008.  Resp. Ex. F.  Petitioner
appealed the denial of his second PCRA petition to the Superior
Court, where the case is awaiting decision.  Resp. Ex. H.

Petitioner filed the instant habeas petition on November 4,
2008.  On January 27, 2009, the Honorable Anita B. Brody entered
a Memorandum and Order which stated that it appeared Petitioner's
habeas petition contained both exhausted and unexhausted claims,
and allowing Petitioner 30 days within which to decide whether to

have the Court determine his petition or withdraw it and file a new, comprehensive petition with only exhausted claims. Petitioner was advised that if he failed to complete the election form attached to Judge Brody's Memorandum and Opinion within 30 days, the current petition would be construed and ruled upon under 28 U.S.C. § 2254.  Petitioner failed to complete and return the election form within 30 days.

## II.  **DISCUSSION**.

In his federal habeas Petition, Petitioner essentially raises a claim for ineffective assistance of counsel, a claim of trial court error, and a claim of prosecutorial misconduct. Specifically, Petitioner alleges that counsel was ineffective by:

- failing to undertake in-depth investigation;

- failing to be adequately prepared;

- failing to properly object;

- failing to request a mistrial;

- failing to preserve Petitioner's appellate rights; and

- acting to deprive Petitioner of his "confrontation" rights, "compulsory process, due process, fair and impartial trial" and equal protection rights.

Pet. p. 9.  Petitioner also alleges numerous areas of trial court error, specifically:

- failure to strike biased jury members;

- judicial abuse of discretion;

- failure to exclude inadmissible hearsay and physical evidence; and

- improper joinder of offenses and defendants.

Pet. p. 9-10.  Petitioner claims that the prosecutor committed misconduct by "injecting false and perjured evidence, suppress[ing] exculpatory evidence, and allow[ing] admission of perjury."  Pet. p. 9.  I recommend that all of Petitioner's ineffective assistance claims EXCEPT for his claim for failure to request a jury charge on third-degree murder are procedurally defaulted.  I further recommend that all of Petitioner's claims of trial court error EXCEPT for the issue with regard to joinder of defendants, as well as his claim of prosecutorial misconduct are procedurally defaulted.  Lastly, I recommend that Petitioner's remaining exhausted claims are also without merit.

## A.   Timeliness.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which became effective on April 24, 1996, prescribes a one-year statute of limitations within which a state prisoner may file a federal habeas petition. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which judgment becomes final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing such state action.

> (c) the date on which the constitutional right asserted
> was initially recognized by the Supreme Court, if the
> right has been newly recognized by the Supreme Court
> and made retroactively applicable to cases on
> collateral review; or
> (D) the date on which the factual predicate of the
> claim or claims presented could have been discovered
> through the exercise of due diligence.

28 U.S.C. § 2244(d)(1) (emphasis added).  A state court criminal judgment becomes "final" for purposes of § 2244(d)(1)(A) "at the conclusion of review in the United States Supreme Court or when the period for seeking certiorari review expires."  Kapral v. United States, 166 F.3d 565, 575 (3d Cir. 1999).

Petitioner's conviction undisputedly became final on or about September 2, 2003, the date his deadline for filing a petition for certiorari in the United States Supreme Court for review of his direct appeal passed without his having pursued such relief.  See 28 U.S.C. § 2101(c) (certiorari petition to be filed within 90 days after entry of judgment or decree). Petitioner's federal petition was filed on November 5, 2008, some five years after the statute of limitations would have expired. Thus, absent some statutory or equitable ground for tolling the statute of limitations, the petition is untimely.

Section 2244(d)(2) of AEDPA sets forth the following tolling provision:

> The time during which a properly filed application for
> State post-conviction or other collateral review with
> respect to the pertinent judgment or claim is pending
> should not be counted toward any period of limitation
> under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added).  It is undisputed that Petitioner's first PCRA petition was pending from June 10, 2004 through August 25, 2008.  When Petitioner filed his first PCRA petition on June 10, 2004, 281 days had run on the AEDPA statute of limitations, leaving him with 84 days in which to timely file his federal habeas petition.  Once Petitioner's PCRA petition was completed when the Pennsylvania Supreme Court denied allowance of appeal on August 25, 2008, Petitioner had 84 additional days, or until November 17, 2008, to file his federal habeas petition.  As Petitioner filed his habeas petition on November 4, 2008,[2] I find his petition is timely.[3]

**B.  Exhaustion and Procedural Default.**

"A federal court is allowed under 28 U.S.C. § 2254(b)(1)(A) to grant a state prisoner's habeas petition only if the

---

[2]  A pro se prisoner's habeas petition is deemed filed at the moment he delivers it to prison officials for mailing to the district court.  Bailey v. Tennis, No. 08-4860, 2009 WL 801865, at *3, n. 3 (Savage, J.)(E.D. Pa. March 25, 2009) citing Burns v. Morton, 134 F.3d 109, 113 (3d Cir. 1998).  As Petitioner signed his habeas petition on November 4, 2008, we apply the mailbox rule to his petition for filing purposes, and use November 4, 2008, as the date that Petitioner's habeas petition was filed.

[3]  Petitioner filed a second PCRA petition on November 5, 2008.  The PCRA court dismissed the Petition without a hearing on November 18, 2008. Petitioner appealed the dismissal of his second PCRA petition to the Pennsylvania Superior Court.  On January 6, 2009, the PCRA court issued an opinion on Petitioner's second PCRA.  This petition is currently awaiting decision in the Superior Court.

Petitioner's second PCRA petition alleges interference by government officials in Petitioner's right to appeal and the existence of after-discovered evidence.  As neither of these issues are claimed by Petitioner in his federal habeas petition, I do not find it necessary to stay and abey Petitioner's habeas petition while his second PCRA is pending in the state courts.

petitioner has exhausted all available state remedies.  In order
to satisfy the exhaustion requirement, a federal habeas claim
must have been 'fairly presented' to the state courts. . . .
This means that a petitioner must 'present a federal claim's
factual and legal substance to the state courts in a manner that
puts them on notice that a federal claim is being asserted.'"
Bronshtein v. Horn, 404 F.3d 700, 725 (3d Cir. 2005) (internal
citations omitted).  As Petitioner is now time-barred from
presenting any additional claims to the state courts, any claims
he has not presented are technically exhausted, and review on the
merits is procedurally barred.  See O'Sullivan v. Boerckel, 526
U.S. 838, 845 (1999).  Claims that have been procedurally
defaulted cannot be reviewed by a federal court on habeas review
"unless the prisoner can demonstrate cause for the default and
actual prejudice as a result of the alleged violation of federal
law, or demonstrate that failure to consider the claims will
result in a fundamental miscarriage of justice."  Coleman v.
Thompson, 501 U.S. 722, 750 (1991).  To satisfy the cause and
prejudice requirement, courts have held that cause exists when a
petitioner demonstrates "some objective factor external to the
defense impeded efforts to comply with the State's procedural
rule."  Slutzker v. Johnson, 393 F.3d 373, 381 (3d Cir. 2004)
(quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)).  The cause
must be "something that cannot fairly be attributed to the

petitioner." <u>Coleman</u>, 501 U.S. at 753.  Prejudice means that the alleged error worked to the Petitioner's actual and substantial disadvantage.  <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982).  To show a fundamental miscarriage of justice, a Petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted.  <u>Cristin v. Brennan</u>, 281 F.3d 404, 412 (3d Cir. 2002).  To establish the requisite probability of actual innocence, the Petitioner must show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).

> **1.    Petitioner's Ineffective Assistance Claims (Other than Failure to Request a Jury Charge), Claims of Trial Court Error (Other than Error in Joinder of Defendants) and Claims of Prosecutorial Misconduct Were Not Raised in State Court.**

In his direct appeal, Petitioner asserted state law claims of error in granting the Commonwealth's Motion for Joinder, insufficient evidence to convict and error involving the refusal to admit a "material witness warrant" as a defense exhibit at trial.  In his first PCRA petition, Petitioner's sole issue was whether counsel was constitutionally ineffective for failing to request a jury charge on third-degree murder.  In his second PCRA petition, Petitioner argued interference by government officials with his right to appeal, and after-discovered evidence.  The claims he avers in his federal Petition relate to 1) ineffective

assistance of all counsel in failing to undertake an in-depth investigation, failing to be adequately prepared, denying Petitioner his confrontation rights, "compulsory process," due process, fair and impartial trial right and equal protection rights, failing to properly object, failing to request a mistrial and failing to preserve Petitioner's appellate issues; 2) trial court error in failing to strike biased jury members, failing to keep out inadmissible hearsay and physical evidence, allowing joinder of offenses and defendants and judicial abuse of discretion; and 3) prosecutorial misconduct.  Pet. p. 9.

In order to satisfy the exhaustion doctrine, the prisoner must "fairly present his claim in each appropriate state court ..., thereby alerting that court to the federal nature of the claim."  Baldwin v. Reese, 541 U.S. 27, 29 (2004).  Fair presentation "requires that the claim brought in federal court be the substantial equivalent of that presented to the state courts. Both the legal theory and the facts underpinning the federal claim must have been presented to the state courts, and the same method of legal analysis must be available to the state court as will be employed in the federal court."  Evans v. Court of Common Pleas, 959 F.2d 1227, 1231 (3d Cir. 1992) (citations omitted).

While aspects of the factual underpinnings of Petitioner's federal claims were presented to the state courts, it is clear that he never raised in state court any of the ineffective

assistance, trial court error or prosecutorial misconduct arguments he includes in his federal petition, other than ineffective assistance in failing to request a jury charge for third-degree murder and trial court error in permitting joinder of defendants at trial.[4]  Accordingly, I find that Petitioner's ineffective assistance, trial court error and prosecutorial misconduct claims, other than the exceptions noted, are unexhausted and procedurally defaulted.

### 2.   Cause and Prejudice/Actual Innocence

The ineffective assistance, trial court error and prosecutorial misconduct claims Petitioner seeks to raise in his federal petition were not properly preserved in the state courts and the time for filing a new petition to preserve them has lapsed.  Therefore, Petitioner must demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that a failure to consider the claims will result in a fundamental miscarriage of justice. Here, Petitioner has not alleged or proven either.  Therefore,

---

[4]   I note that although Petitioner alleged ineffective assistance of counsel for failing to request a jury charge on third-degree murder in his first PCRA petition, Petitioner does not specifically list failure to request this jury charge as one of his claims in his federal habeas petition.  To the contrary, Petitioner lists his first ground for habeas relief as "Ineffectiveness of all counsel(s)," and goes on to lists numerous ways that he believes his counsel was ineffective, none of which address trial counsel's failure to request a jury charge on third degree murder.  However, as Petitioner exhausted this claim in the state court on his PCRA petition and lists ineffective assistance as a federal habeas claim, I will give him the benefit of the doubt and address his trial counsel's failure to request a jury charge as one of the claims properly before this court on Petitioner's federal habeas petition.

the failure to consider the issues on habeas review will not result in a miscarriage of justice.

Petitioner may be excused from his default by showing he is actually innocent of the crimes for which he has been convicted.  The United States Supreme Court has held that "'actual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 624 (1998) (citing Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  A petitioner establishes actual innocence by asserting "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial," showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.  Hubbard v. Pinchak, 378 F.3d 333, 339-40 (3d Cir. 2004) (quoting Schlup, 513 U.S. at 324).  Here also, Petitioner has neither alleged nor proven actual innocence.

Accordingly, I recommend that Petitioner has failed to show cause and prejudice or actual innocence, and these issues are procedurally defaulted and must be dismissed.

**C.   Petitioner's Ineffective Assistance Claim**

In his Petition, Petitioner does sets forth numerous claims for ineffective assistance of counsel, none of which were exhausted at the state court level, other than his claim that his trial counsel was ineffective in failing to request a jury charge

-13-

of third degree murder in his first PCRA, I give him the benefit of the doubt and assume that Petitioner intended his federal habeas petition to include a claim for ineffective assistance based on this jury charge.

A claim for ineffective assistance of counsel is based on the Sixth Amendment right to counsel, which exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993)(quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)). A claim for ineffective counsel must meet the two-part test advanced by the Strickland court. First, petitioner must show that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, [petitioner] must show that the deficient performance prejudiced the defense. This requires a showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. More precisely, petitioner must show that (1) his attorney's performance was unreasonable under prevailing professional norms, and, unless prejudice is presumed, that (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. United States v. Day, 969 F.2d 39, 42 (1992).

Several important factors are considered in evaluating an

attorney's performance under <u>Strickland</u>.  First, there are no
detailed rules or guidelines for counsel to follow for any
particular set of circumstances.  "Any such set of rules would
interfere with the constitutionally protected independence of
counsel and restrict the wide latitude counsel must have in
making tactical decisions . . . [thereby putting counsel at odds
with] the overriding mission of vigorous advocacy of the
defendant's cause."  <u>Strickland</u>, 466 U.S. at 689.  The Court
recognized that it is much easier to find fault with counsel's
choices after those choices have been implemented and have been
proven unsuccessful.  "A fair assessment of attorney performance
requires that every effort be made to eliminate the distorting
effect of hindsight. . . ."  <u>Id</u>.  Thus, in judging counsel's
conduct, the court will view counsel's choices in light of all
the circumstances while at the same time keeping in mind that
"[t]here are countless ways to provide effective assistance in
any given case."  <u>Id</u>.  The Supreme Court concluded that these
factors, along with considerations of counsel's independence and
attorney client trust, gave counsel a strong presumption that his
conduct "falls within the wide range of reasonable professional
assistance."  <u>Id</u>.

        To meet the first part of the <u>Strickland</u> test, petitioner
must show that, under all circumstances, counsel's representation
fell below an objective standard of reasonableness which is

measured by prevailing professional norms.  Id. at 688.  The
second part requires that petitioner demonstrate that counsel's
performance actually prejudiced the defense, thereby rendering
the result of the trial unreliable.  Id. at 687.  It is not
enough that petitioner demonstrate that counsel's errors had some
conceivable effect on the outcome of the proceeding.  Id. at 693.
"Virtually every act or omission of counsel would meet that
test."  United States v. Valenzuela-Bernal, 458 U.S. 858, 866-67
(1982).  Instead, petitioner must show that counsel's actions
were so unprofessional that they prejudiced the jury and
undermined the outcome.

The Pennsylvania standard for ineffective assistance, i.e.,
that to show ineffective assistance a petitioner must show that
the underlying claim has merit, that counsel had no reasonable
basis for his conduct, and resulting prejudice (meaning that the
outcome of the proceeding would have been different), see
Commonwealth v. Todaro, 701 A.2d 1343, 1346 (1997), is materially
identical to the test enunciated in Strickland.  See Werts v.
Vaughn, 228 F.3d 178, 203 (3d Cir. 2000).  Therefore, "the
appropriate inquiry is whether the Pennsylvania courts'
application of Strickland to [petitioner's] ineffectiveness claim
was objectively unreasonable, i.e., the state court decision,
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under Strickland."  Werts,

228 F.3d at 204.

Specifically, Petitioner claims that his trial counsel was ineffective for failing to request a jury instruction regarding third-degree murder, a lesser-included offense of second-degree murder, the offense alleged against Petitioner.  Petitioner exhausted this claim in state court on an appeal of his PCRA petition.  The Pennsylvania Superior Court rejected this claim, stating as follows:

> It is black-letter law that a defendant in a murder case will be entitled to a jury charge on a lesser-included offense where there is some evidence presented at trial to support the charge. . . However, in no case will a defendant be entitled to a charge which invites the jury to return its verdict based upon mercy rather than fact. . . It is true that third-degree murder is a lesser-included offense of second-degree murder; however, a jury charge for third-degree murder was not warranted by the facts presented at trial. As explained by trial counsel at the PCRA hearing, his efforts at trial were to demonstrate the following: (1) that [Petitioner] was not involved in any way, shape, or form, with the robbery and the accompanying homicide; and (2) that the Commonwealth's witnesses presented inconsistent and contradictory evidence trying to join [Petitioner] as the accomplice of the co-defendant in this case.  Therefore, it is obvious that trial counsel's efforts at trial were to portray [Petitioner] as an innocent bystander to the co-defendant's activities and, thereby, achieve an outright acquittal for [Petitioner].  Consequently, there was no evidence presented at trial to demonstrate that [Petitioner] was involved in a less-culpable capacity in the robbery or resulting murder that would give rise to only a third-degree murder conviction. As such, any instruction given to the jury regarding third-degree murder would have improperly invited the jury to return a verdict based on mercy rather than the facts presented at trial. . . Accordingly, a third-degree murder instruction was not warranted by the facts of the case. . . Therefore, [Petitioner's] claim of trial counsel's

ineffectiveness is entirely without merit and, therefore, fails.

Resp. Ex. D; Commonwealth v. Thompson, No. 2107 EDA 2006 (slip op), 953 A.2d 607 (Pa. Super. 2008)(table)(internal citations omitted).  The state court's conclusion that Petitioner's underlying jury instruction claim and ineffectiveness claim were meritless was neither contrary to, nor an unreasonable application of, the federal ineffectiveness standard as set forth in Strickland.  Further, Petitioner's trial counsel cannot be "deemed ineffective for failing to raise a meritless claim." Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); citing Commonwealth v. Carpenter, 725 A.2d 154, 161 (Pa. 1999). Therefore, the Superior Court's decision is neither contrary to nor an unreasonable application of state law, and Petitioner's ineffective assistance of counsel claim for failure to request a jury instruction on third-degree murder must be denied.

### D.    Petitioner's Claim That The Trial Court Erred by Granting The Commonwealth's Motion for Joinder

Petitioner's remaining exhausted claim involves whether the trial court committed an error when it granted the Commonwealth's Motion for Joinder, thereby joining his trial with that of his co-defendant, Bagley.  Petitioner claims that at his first trial, which resulted in a mistrial, his "offenses and defendants" had been severed, meaning Petitioner was not tried with Bagley at his first trial.  Pet. p. 9.  Petitioner further claims that although

he "ha[d] nothing to do with [the] crime, [he] could put the sole perpetrator there as a lone actor," and that Petitioner "could only be convicted by unlawfully attaching him to the guilty party."  Pet. pp. 9-10.  Petitioner claims that this joinder "irreparably prejudiced" him.  Pet. p. 10.

Petitioner exhausted this claim on direct appeal.  The Pennsylvania Superior Court found this argument to be meritless, stating:

> "It is well established that a motion for severance is addressed to the sound discretion of the trial court, and its decision will not be disturbed absent a manifest abuse of discretion."  Where, as was the case here, the crimes charged grew out of the same acts and much of the same evidence is necessary or applicable to all defendants, joint rather than separate trials are to be preferred.  Severance may nevertheless be proper where a defendant can show that he will be prejudiced by a joint trial.

> "In the absence of manifest prejudice, our law does not mandate separate trials.  To the contrary, the general policy of law is to conserve limited court resources, and to encourage joint trials in order to avoid the expense of duplicating evidence in a separate proceeding" . . ."Joint trials are advisable where conspiracy is charged" . . .

> [Petitioner] contends that the defenses in this case were antagonistic and that in order for the jury to believe [Petitioner]'s defense, that he was at the wrong place at the wrong time, they would have to disbelieve his co-defendant, Mr. Bagley's, defense that the police arrested the wrong man.  We disagree.

> > Although the possibility of conflicting defenses is a factor to be considered in deciding whether to grant severance, it is clear that more than a bare assertion of

-19-

conflict is required . . [T]he mere fact that
there is hostility between defendants, or
that one may try to save himself at the
expense of another, is in itself not
sufficient grounds to require separate
trials.  Further, defenses become
antagonistic only when the jury, in order to
believe the essence of testimony offered on
behalf of one defendant, must necessarily
disbelieve the testimony of his co-defendant.

_____ "The defenses presented by the various defendants must
be 'irreconcilable and exclusive' and 'conflict at the
core' before the substantial prejudice burden is met.
                      . . .
[Petitioner] argues that because the cases were joined,
he was "prohibited from arguing that Mr. Bagley was the
sole perpetrator of this crime and instead he was only
allowed to argue that 'some other guy' committed the
crime" . . . [Petitioner] was not permitted to use his
pre-trial statement given to police in its entirety.
Contrary to [Petitioner]'s contention, his statement
given to police was properly redacted to eliminate
direct reference to Bagley as the sole perpetrator. . .
The statement as admitted actually supports
[Petitioner]'s defense that he was not the shooter and
that "some other guy" committed the crime. [Petitioner]
was unable to use the statement to establish that
Bagley was the one who committed the robbery and
murder, but was able to establish that a third person
was present and that that person alone was the sole
perpetrator. [Petitioner] has failed to show that he
suffered substantial prejudice by reason of the joint
trial.  Thus, the trial court did not abuse its
discretion in granting the Motion for Joinder.

Resp. Ex. B, <u>Commonwealth v. Thompson</u>, No. 595 EDA 2002 (slip op)

at pp. 3-5 (Pa. Super. 2003)(internal citations omitted).   I

recommend that this decision was not contrary to Supreme Court

law.  As in Pennsylvania, the United States Supreme Court has

stated that "[t]here is a preference in the federal system for

joint trials of defendants who are indicted together" because

joint trials "promote efficiency and 'serve the interest of
justice by avoiding the scandal and inequity of inconsistent
verdicts.'"  Zafiro v. United States, 506 U.S. 534, 537 (1993)
(quoting Richardson v. Marsh, 481 U.S. 200, 210 (1987)); see also
United States v. Lane, 474 U.S. 438, 449 (1986) (joint trials of
defendants named in a single indictment are favored because they
"conserve state funds, diminish inconvenience to witnesses and
public authorities, and avoid delays in bringing those accused of
crime to trial").  In Zafiro, as in this case, the defendants
argued that they had been prejudiced because they had "mutually
antagonistic" or "irreconcilable" defenses, and urged the Court
to adopt "a bright-line rule, mandating severance whenever
codefendants have conflicting defenses."  Id. at 538.  The Court,
however, explicitly declined to adopt such a rule.  Id.  Rather,
under the holding of Zafiro, a court should grant a severance
"only if there is a serious risk that a joint trial would
compromise a specific trial right of one of the defendants, or
prevent the jury from making a reliable judgment about guilt or
innocence."  Zafiro, 506 U.S. at 539.[5]

---

[5]"Such a risk might occur," the Court observed, "when evidence that the
jury should not consider against a defendant and that would not be admissible
if a defendant were tried alone is admitted against a codefendant."  Id. at
539.  The Court cited three specific examples in which this might take place:
(1) "a complex case" involving "many defendants" with "markedly different
degrees of culpability," (2) a case such as Bruton v. United States, 391 U.S.
123 (1968), where evidence that is probative of one defendant's guilt is
technically admissible only against a co-defendant, and (3) a case where
evidence that exculpates one defendant is unavailable in a joint trial.
Zafiro, 506 U.S. at 539.  The Court made clear that a defendant is not
entitled to severance merely because he may have a better chance of acquittal

The Pennsylvania case law that declines to apply a bright line rule of antagonism and requires that defendants in a joint trial demonstrate a real potential for prejudice is materially indistinguishable from the Supreme Court's formulation that a defendant must demonstrate a serious risk that a joint trial would compromise a specific trial right.  Accordingly, I recommend that the Pennsylvania law is not contrary to Supreme Court law.

For all of these reasons, I make the following:

---

in a separate trial.  Id. at 540.

## RECOMMENDATION

AND NOW, this 28th day of May, 2009, IT IS RESPECTFULLY RECOMMENDED that the instant Petition for Writ of Habeas Corpus should be DENIED with prejudice and DISMISSED without an evidentiary hearing.  I further RECOMMEND that there is no probable cause to issue a certificate of appealability.  The Petitioner may file objections to this Report and Recommendation. See Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.

BY THE COURT:


/s/ Arnold C. Rapoport
ARNOLD C. RAPOPORT
UNITED STATES MAGISTRATE JUDGE